McNAB, In re. See Case No. 10,292.

---

## Case No. 8,906.

### In re McNAB & H. MANUF'G CO.

[18 N. B. R. 388;[1] 21 Pittsb. Leg. J. 88.]

District Court, S. D. New York. Aug. 29, 1878.

BANKRUPTCY — COMPOSITION — DISCONTINUANCE— NOTICE—WAIVER—PERSONAL AND BUSINESS CHARACTER.

1. A provision in a composition agreement, that the proceedings may be discontinued at any time without notice to the creditors, is to be treated merely as a waiver on the part of the creditors of notice of an application to discontinue, and does not bind the court to grant such an application.

[Cited in brief in Weeks v. Prescott, 53 Vt. 69.]

2. A composition is none the less payable in money because the payment is postponed to a future day.

3. The composition was for seventy-five per cent., payable in twelve equal instalments, the first being in three months and the last in three years from the date of confirmation, to be evidenced by the notes of the bankrupt without other security. It was also provided that upon the giving of the notes all the property of the bankrupt should be surrendered to it. It appeared that the president of the bankrupt, who was also its treasurer, had used the funds and credit of the company to a large amount for his own benefit; that, after his defalcation was discovered, he resigned his office as treasurer, but was continued as president; that none of the trustees have manifested any disposition to punish him or to compel him to make restitution, but have settled the matter by taking his stock and crediting him on his account therefor, and by paying the notes outstanding which were either made or indorsed by him in the name of the corporation. Held, that the corporation in its managing officers was not of that unquestionable personal, and business character that it would be reasonably safe to trust it for three

[1] [Reprinted from 18 N. B. R. 388, by permission.]

years, pending the payment of the composition, with the property on which the creditors had a hold, and confirmation was accordingly refused.

[In the matter of the McNab & Harlin Manufacturing Company.]

James P. Campbell, for bankrupt.
Niles & Bagley, for opposing creditors.
Gray & Davenport, for certain creditors approving.

CHOATE, District Judge. This is a motion for a final order confirming a composition. The composition, which has received the assent of more than the requisite number of creditors, is for the payment of seventy-five per cent., in twelve equal instalments, at intervals of three months from the date of confirmation, the first being in three months and the last in three years from said date, to be evidenced by the promissory notes of the bankrupt corporation without other security. One of the terms of the composition is, that, immediately upon the giving of the notes, all the property of the bankrupt, valued at about one hundred and twenty-five thousand dollars, is to be surrendered to the bankrupt, and that the proceedings may be discontinued at any time without notice to the creditors.

Several objections are urged by opposing creditors under the general ground that the composition is not for the best interests of all concerned.

1. The objection that the proceedings may under the composition be discontinued, so that the court would be disabled from enforcing it in case of default, is not a valid reason for refusing to confirm, because this provision is to be treated merely as a waiver on the part of the creditors of notice of an application to discontinue, and does not bind the court to grant such an application of the debtor, and the practice of the court is to refuse all such applications until the composition is fully performed.

2. The objection that the composition is not payable in money must be overruled. It is none the less payable in money because the payment is postponed to a future day or days, and the notes are to be given merely as evidence of and security for the several instalments.

3. The objection that the assets could be made to pay more than is now offered must also be overruled, because, upon a careful examination of all the testimony, it appears that, with the present assets and the present liabilities of the company, it could not be expected that the creditors could do better than this if the estate were wound up by an assignee. And on the question of the amount offered, I concur with the creditors and the register in their opinions, and on this question many matters discussed on the hearing relating to the mismanagement of the affairs of the corporation are wholly immaterial.

4. But the chief objection to this composition is, that the delay in the payment of the composition is unreasonable and that no se-

curity whatever is given for the payment except the notes of the bankrupt corporation.

The length of time proposed, three years, is certainly much beyond the usual period of credit given in these proceedings. It appears, however, to have been carefully considered and recommended by the creditors, and if the payments were reasonably secured this objection would not in this case be sustained. The time required for debtors to realize out of their property or business the amount requisite to pay the composition must vary greatly with the nature of the business and the property, the amount to be paid, and with other special circumstances. This objection of the length of the credit, however, is closely connected with the other, that there is no security for the payment of the composition. In two late cases,—In re Wilson [Case No. 17,785], and In re Bloch [Id. 1,551],—the objection that no security is given and that the property is surrendered to the debtor was carefully considered, and it was held that the principal element in the determination of the validity of the objection is what shall be shown as to the personal and business character of the debtor, and the composition in such case will be confirmed or rejected as upon the proofs it shall appear that the arrangement is or is not judicious and reasonably safe for the creditors. In the case of a debtor corporation the promises to pay which the creditors receive are necessarily of less value than in case of a natural person of the same means, because the natural person's promise may have a value in the future, notwithstanding the loss of his present property; whereas, in case of a corporation, if its property is gone, there is no chance of enforcing its promises against it. The principle of the cases cited applies therefore with even greater force to the case of a bankrupt corporation.

In the present case it appears that this corporation was organized in 1871 or 1872, and took the business and assets of James McNab and John Harlin, metal manufacturers and dealers. McNab and Harlin were the principal stockholders and managers of the corporation, the other stockholders being, with one exception, subordinates in the employ of the company. McNab was made the president and treasurer, and had exclusively the conduct of the financial part of the business, and Harlin was made the vice-president, and had the conduct of the mechanical part of the business. This continued until about the 1st of November, 1877. The business appears to have been prosperous, and large dividends were declared and paid, and the president and vice-president were each paid a salary of five thousand dollars. Then it was suddenly discovered, by the confession of McNab, that he had abused his trust, had used the funds and credit of the company for his own business in land speculations, to the amount of about one hundred and thirty thousand dollars; that there were then outstanding about eighty-three thousand dollars of paper of the said company, on which it was either maker or indorser, the proceeds of which had been thus used by McNab fraudulently for his own benefit. The evidence shows that up to that time Harlin knew nothing of these fraudulent transactions. The whole capital stock of the company was about one hundred and seventy thousand dollars, of which McNab owned fifty thousand dollars. The last previous account of stock or inventory showed a surplus of assets over and above the capital, so that this fifty thousand dollars stood on the books at the value of seventy-nine thousand dollars; but it is evident, from the testimony as to the actual value of the assets shortly after this period, that the valuation of the assets on the books, which was at their cost price, had become grossly excessive, and making allowance for this excess and for the debts thus fraudulently contracted by McNab on the part of the corporation, it was at least, a matter of doubt whether at the time of this discovery the corporation was solvent, if these fraudulent debts were assumed by it. McNab resigned his office as treasurer, but was continued as president till a few days before the commencement of these bankruptcy proceedings in April, 1878. The financial part of the business was at once assumed by, and has ever since been carried on by, Harlin. Under advice of counsel that the corporation was legally bound on the outstanding fraudulent notes, the trustees agreed to assume them, and they were either paid or renewed at maturity, and before the commencement of these proceedings had been fully paid. I do not think the criticism of the counsel for the opposing creditors, that the corporation thus assumed debts against which it could have been defended, is borne out by the evidence. Though the notes were usurious, this would have been no defense to a corporation, and the holders, so far as appears, were mostly, if not altogether, innocent holders, for value and McNab had apparent authority to issue the paper. The corporation took from McNab his stock, giving him credit for seventy-nine thousand dollars on his account. This was virtually forgiving him that amount of his indebtedness. Neither Harlin nor the trustees have manifested any disposition to punish him or to compel him to make restitution, and the settlement made with him and with the holders of the fraudulent notes was such as to release him from the consequences of his crimes, and to secure the payment of the paper fraudulently issued by him, regardless of whether the proper business creditors of the company would be paid in full or not. The case called for the most stringent measures against McNab; but instead of procuring his being sent to the penitentiary, the managers of this corporation have apparently in all things consulted his interests in conducting its affairs since the discovery of his frauds; and while there is nothing directly reflecting on the personal integrity of Mr. Harlin or the other

trustees, who indeed are mere nominal trustees of the corporation, I think it cannot be held that the corporation in its managing officers is of that unquestionable personal and business character that it is reasonably safe to trust it for three years, pending the payment of the composition, with the property on which the creditors now have a hold. I have not overlooked the very large majority by which the creditors have approved this composition; but giving the action of the creditors its due weight, I am compelled to withhold the confirmation of the resolutions.

Motion denied, unless within ten days proceedings are duly instituted for a modification of the terms of composition or for securing the payment thereof, in which case the motion may be renewed.